FILED

**November 13, 2017**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 16-1047  -  *West Virginia Lottery, West Virginia Lottery Commission, and Alan Larrick, Director of the West Virginia Lottery v. A-1 Amusement, Inc., Action Gaming, Inc., Advanced Lottery Technologies, LLC, Blue Diamond, LLC, CD 3 LLC, Clay Music Corp., Coach's Club Association, Dusty Enterprises, Inc., Elm Room, Inc., Fabulous 50's Café, LLC, Gridcoach, LLC, Hot 5 Stop, LLC, Jerry's Bar Association, Leejay, Inc., LL&M, LLC, Mimi's Inc., Moose Nitro Lodge 565, Mountaineer Music, LLC, PDM Associates of Weirton, LLC, Palatokas Associates, LLC, Patty's, Inc., Progressive Video Lottery, LTD., Random World, LTD., TA Vending, LLC, The Lounge, LLC, Tiffany's, LLC, Trans-allegheny Enterprises, LLC, Wheeling Coin, LLC, Woldap, LLC, WV "Café" Holding Company, LLC, and West Virginia Amusement & Limited Video Lottery Association, Inc.*

Davis, Justice, dissenting:

This was a simple case that the majority has transformed into a fiscal nightmare for the State treasury and its taxpayers. In this proceeding, the circuit court ruled that the plaintiffs did not have to limit their "takings" claim for relief to the insurance policy limits provided by the Lottery Commission. The circuit court found that, because the plaintiffs' theory of liability was grounded on the Takings Clause of the State Constitution, the plaintiffs are entitled to receive whatever amount of compensation a jury decides to award them. The majority opinion not only agreed with the circuit court, but it went where no judicial opinion of this Court has ever gone in the history of this State! That is, the majority of the Court has now ruled that all claims against the State for injury to personal property unrelated to real estate must be litigated as an eminent domain proceeding under W. Va. Code § 54-2-1 *et seq.* Such a decision is fiscally irresponsible because it extends the concept

1

of condemnation to arenas where no one could have fathomed it would ever apply and will undoubtedly be financially devastating to this State. For the reasons set out, I firmly dissent.[1]

### *Only the Legislature has Authority to Expand the Scope of Eminent Domain Proceedings*

The greatest tragedy in the majority opinion is the complete absence of any constitutional or statutory analysis to determine whether a claim against the State for the alleged taking of purely personal property, *unrelated to real estate*, is authorized in an eminent domain proceeding. Because the majority opinion utterly fails to include this critical legal analysis in its decision of this case, I will supply it in my dissent.

To begin, the state constitutional basis for compensation by the State for taking property is found in article III, § 9 of the West Virginia Constitution:

> Private property shall not be taken or damaged for public use, without just compensation; nor shall the same be taken by any company, incorporated for the purposes of internal improvement, until just compensation shall have been paid, or secured to be paid, to the owner; and when private property shall be taken, or damaged for public use, or for the use of such corporation, *the compensation to the owner shall be ascertained in such manner as may be prescribed by general law*: Provided, That when required by either of the parties, such compensation shall be ascertained by an impartial jury of twelve freeholders.

(Emphasis added). This constitutional provision clearly states that both the State and

---

[1]The majority opinion resolved two other issues that pale in comparison to the profoundly catastrophic eminent domain ruling.

authorized corporations must provide just compensation for taking "private property." More importantly, the Takings Clause expressly requires the Legislature to enact legislation for carrying out the intent of this constitutional provision. Relevant to this case, the Legislature enacted W. Va. Code § 54-2-1 *et seq.* to govern the taking of private property by the State. Consequently, we must look to this statutory scheme to discern whether the Legislature has authorized an eminent domain proceeding by the State to compensate a party *for purely personal property*, unrelated to land.

The jurisdiction in which the State may bring a condemnation proceeding is set forth in W. Va. Code § 54-2-1 (1882) as follows:

> In any case in which property may lawfully be taken for a public use, application may be made by petition to the circuit court or the judge thereof in vacation, of *the county in which the estate is situated*, to appoint commissioners to ascertain a *just compensation to the owners of the estate* proposed to be taken. *If a tract lies partly in one county and partly in another*, the application in relation thereto may be made in either county.

(Emphasis added). West Virginia Code § 54-2-2 (1957) outlines certain matters the State must include in a complaint for eminent domain. This statute states, in pertinent part:

> The pleadings shall be in writing and shall be verified. The petition shall describe with reasonable certainty *the property proposed to be taken, and may embrace one or more parcels of land where the ownership is the same.* If an *estate less than a fee is proposed to be taken*, the petition shall describe with reasonable certainty the particular estate less than the fee which it is proposed to take, the name of the owner or owners thereof, the manner and extent of their respective interests. If there are any *liens upon or conflicting claims to such real estate*,

3

the petition shall state the nature and amount of such liens and claims and the names and places of residence of the persons who hold the same, so far as known to the petitioner.

(Emphasis added). When a condemnation proceeding is initiated, it is first heard by a condemnation commission. West Virginia Code § 54-2-9 (1963) describes the duties of the commission as follows:

The commissioners, after viewing the property, if a view is demanded, and hearing any proper evidence which is offered shall *ascertain what will be a just compensation to the person entitled thereto for so much thereof as is proposed to be taken, or for the interest therein, if less than a fee, and for damage to the residue of the tract beyond all benefits to be derived*, in respect to such residue, from the work to be constructed, or the purpose to which *the land to be taken is to be appropriated*, including, when less than the fee is taken, the actual damage, if any, done, or that may be done, to the fee by such construction[.]

(Emphasis added).


It is quite clear to me that, pursuant to the above-quoted statutes, the Legislature has provided for a condemnation proceeding involving the State when the matter concerns taking real property, *i.e., land*. Nothing in these statutes provides for a condemnation action involving the State that is brought to compensate a party for the so-called taking of purely personal property that is completely unrelated to land. It is equally clear to me why the majority opinion conveniently failed to examine these statutes: *none* of these statutes support the cause of action created by the majority for the alleged additional expenditure of money to compensate the plaintiffs for buying new computer programs!

4

The *only* authority relied upon by the majority opinion in reaching its absurd decision was dicta from the opinion in *G.M. McCrossin, Inc. v. West Virginia Board of Regents*, 177 W. Va. 539, 355 S.E.2d 32 (1987), wherein Chief Justice McGraw suggested that a claim against the State for injury to personal property might be brought under W. Va. Code § 54-2-1 *et seq.* If the majority opinion had performed a scintilla of research, however, it would have discovered that the case Justice McGraw cited for support of his dicta, *Teter v. West Virginia Central & Pittsburgh Railway Co.*, 35 W. Va. 433, 14 S.E. 146 (1891), did not involve a State eminent domain proceeding.

The decision in *Teter* involved a railroad company that had removed "valuable stone" from the plaintiffs' land for the purpose of building a bridge. The plaintiffs filed an action to enjoin the railroad company from removing the stone. The trial court ultimately granted a partial injunction that prohibited the railroad company from quarrying and splitting out stone, but allowed it to remove stone that was "already split by the defendant in sizes suitable for building and abutment purposes[.]" *Teter*, 35 W. Va. at 434, 14 S.E. at 147. The plaintiffs appealed the partial injunction order. On appeal, this Court examined the railroad company's conduct under the Takings Clause and specific statutes related to takings by railroad companies and by corporations generally. In doing so, the Court in *Teter* found that the Legislature provided for eminent domain proceedings against railroad companies for taking not only real estate, but personalty such as "wood, earth, gravel, shale, or stone, necessary to be used in constructing its railroad[.]" *Teter*, 35 W. Va. at 436, 14 S.E. at 147.

5

The opinion reasoned as follows:

> That this provision [the Takings Clause] was intended to protect stone and other "material" annexed to the freehold, or detached therefrom, is sufficiently proved by the fact that the legislature has provided all of the procedure for taking the same, by the exercise of eminent domain, which it has instituted for the taking of real estate. This is abundantly proved by section 14, c. 52, Code, in regard to corporations generally, and by the provisions of chapter 54, § 49, which are exclusively applicable to railway companies. . . .
>
>      . . . .
>
> [T]he mode of taking material from lands adjoining a railway is fully provided for, and such material is placed by our Code under the full protection of the shield of the constitution. It is hardly necessary to add that such material cannot be taken, without the owner's consent, until due compensation is paid or secured by the company; nor does it make a particle of difference whether the same is still attached to the land, or has been detached therefrom by the agents of the company; neither the constitution nor the statute recognizes any such distinction.
>
> The action of the Circuit Court, therefore, in treating the company as an ordinary trespasser, was erroneous. It should have been treated as an internal improvement company, or railroad company, which had the right to take material for the construction of its road, without the owner's consent, and which, in the exercise of that right, had failed to comply with the conditions imposed by the constitution and the legislature of the State.
>
> The clause of the constitution which we are now considering protects private property in personalty as fully as in real estate; *neither* can be taken against the owner's consent until payment is first made or secured.
>
> But, for the purposes of this suit, it is sufficient to know that the legislature has construed the Constitution for us in the matter of taking stone and the like material by railway

companies from adjacent lands without the owner's consent.

*Teter*, 35 W. Va. at 435-36, 14 S.E. at 147-48 (emphasis in original; citations omitted). The opinion in *Teter* reversed the circuit court's order and remanded the case for further proceedings that included an eminent domain proceeding as provided for against railroad companies.

What is important to understand about *Teter* is that its discussion of an eminent domain proceeding involving personalty was limited to items removed from land by railroad companies–as *expressly authorized by the Legislature*. The dicta by Chief Justice McGraw in *McCrossin*, which was relied upon by the majority opinion, took the ruling in *Teter* out of context. *Teter* did not hold that this Court may create an eminent domain cause of action that requires the State to compensate a party for taking personal property, unrelated to land.[2] This Court does not have the authority to create such a cause of action. The West Virginia State Constitution expressly has delegated exclusive authority to *the Legislature* to create eminent domain proceedings. This point was acknowledged by this Court in Syllabus point 2 of *State ex rel. Firestone Tire & Rubber Co. v. Ritchie*, 153 W. Va. 132, 168 S.E.2d 287 (1969), wherein we held:

> Where the constitution provides that private property shall not be taken or damaged for public use without just

---

[2]In fairness to the parties in this litigation, they did not raise or brief this issue. The majority opinion *sua sponte* decided to address this matter with literally no briefing on the matter by the parties.

compensation, damage to personal property is covered therein and is subject to condemnation proceedings; provided, *proper procedure is enacted by the legislature to cover such property* where required in the constitution unless such provisions are self-executing.

(Emphasis added). The decision in *Firestone* pointed out that

> [t]he general law with regard to the procedure for compensation in eminent domain proceedings is found in Chapter 54 of the Code of West Virginia. When the state institutes condemnation proceedings under the general law dealing with eminent domain, *the only procedure set out therein for compensation is for land or real estate taken or for the interest therein if less than a fee, and for damages to the residue of the tract adjacent thereto.* Code, 54-1-1 *et seq.*, as amended, and in particular Code, 54-2-9, as amended. *There is no procedure prescribed by general law for compensation for personal property[.]*
>
> *This Court has clearly indicated that there is no procedure to obtain damage to personal property in eminent domain proceedings instituted by the state under Chapter 54 of the Code.*

*Firestone*, 153 W. Va. at 138, 168 S.E.2d at 290-91 (citation omitted; emphasis added).

In the final analysis, when the Legislature intends for personal property to be the sole basis of a condemnation proceeding, it knows exactly how to enact legislation to achieve this result. *See* W. Va. Code § 54-2-2a (1973) ("[A] public utility, person or corporation required . . . to obtain a certificate of public convenience and necessity for the construction and location of a high voltage transmission line, shall file a certified or attested copy of such certificate with its *petition to condemn real or personal property for the*

8

*construction of such high voltage transmission line*.  Failure to file such certified or attested copy of such certificate shall result in dismissal of the petition." (emphasis added)).  The Legislature has not authorized a condemnation proceeding to require the State to condemn personal computer programs and compensate their owners.  The majority opinion has determined to adopt such a procedure of its own accord.  And, simply put, the majority is flatly wrong because it has chosen to ignore the very clear constitutionally-drawn line of demarcation!!!

The implications of the majority's rogue opinion are fiscally frightening.  I urge the Legislature to act quickly to undo the potentially catastrophic financial consequences to the State that could result from the majority's absurd and patently unfounded decision.  For example, the hundreds of personal property cases against the State that are yearly litigated in the former Court of Claims[3] can now, thanks to the majority's opinion, be brought as inverse condemnation actions to force the State to institute condemnation proceedings.  The Legislature must make clear that which has always been clear until the majority inexplicably blurred the unmistakable line.  Therefore, I implore the Legislature to swiftly enact legislation that prohibit a party from bringing an inverse condemnation proceeding to require the State to condemn purely personal property that is unrelated to the taking of land.  The sanctity of our State's coffers depends on it.

---

[3]The Court of Claims was renamed the West Virginia Legislative Claims Commission. *See* W. Va. Code § 14-2-4 (2017).

Based on the foregoing, I vigorously dissent.